HOOD *et al.* v. SOUTHERN RAILWAY COMPANY.

No. 6919. September 27, 1929.

*T. J. Lewis,* for plaintiffs.

*Fred Morris* and *Maddox, Matthews & Owens,* for defendant.

ATKINSON, J. The Court of Appeals certified the following question for decision: "Under section 4424 of the Civil Code of 1910, as amended by the act of 1924 (Ga. L. 1924, p. 60), can adult children maintain an action for the homicide of their mother, where it appears that the husband and father survived the mother, but died before the institution of any suit on account of the homicide?"

In *Atlanta & West Point Railroad Co.* v. *Venable,* 65 *Ga.* 55, it was held: "Section 2971 of the Code [of 1873] provides as follows: 'A widow, or if no widow a child or children, may recover for the homicide of the husband or parent; and if suit be brought by the widow or children, and the former or one of the latter dies pending the action, the same shall survive in the first case to the children, and in the latter case to the surviving child or children.' *Held,* that this section gives a right of action against a railroad by the minor children for the homicide of the mother, and does not restrict their right to the homicide of the father." In the opinion it was said: "The court below held that the word 'parent' meant either father or mother in its ordinary sense, and that this signification was not restricted by the other words in the section. We think that the ruling is right. If the legislature had meant to limit the recovery to the death of the father, the word father would have been employed. The fact that the word 'parent' is used seems to us pregnant with meaning. In all statutory enactments in this State, 'the ordinary signification shall be applied to all words, except words of art, or connected with a particular trade or subject-matter,' is the language of section 4 of the Code. The word 'parent' is connected with no trade, and is not a word of art; it means ordinarily mother as well as father, and must be so construed. The reason and spirit of the enactment would require the same construction. In case of the death of the father, the mother is bound to support the children—Code, § 764;—therefore they have an interest in her life, and ought to be authorized to sue for her homicide, just as well as they would be for their father's if he had been killed and they were deprived of his support. The section of the Code under consideration—§ 2971—is codified from the acts of 1850 and 1855-6—Cobb's Digest, p. 476; Acts of 1855-6, p. 155; and a careful examination of those acts does not lead us to a different construction of this section. Even if the words of those acts were so changed as to give a larger meaning to the Code, that meaning would be applied as the latest utterance of the law-making power."

In *Thompson* v. *Georgia Railway & Power Co.,* 163 *Ga.* 598, 601 (136 S. E. 895), the above provision of the Code as amended by subsequent legislation (Acts 1878-9, p. 59; Acts 1887, p. 43) was considered in connection with the foregoing decision, and it was

held that "An adult child can not recover for the homicide of his widowed mother, which took place prior to the act of August 18, 1924, under section 4424 of the Code of 1910." The ruling in that case was not that a minor child had not a right of action for the tortious homicide of its mother, as ruled in the *Venable* case supra, but only that an *adult* child did not have such right of action prior to the act of 1924 (Acts 1924, p. 60). In the opinion it was said in part: "By the act of October 27, 1887, section 2971 of the Code of 1882, as amended by the act of December 16, 1878, was amended by adding the following provision: 'The husband may recover for the homicide of his wife, and if she leave child or children surviving, said husband and children shall sue jointly and not separately, with the right to recover the full value of the life of the deceased, as shown by the evidence, and with the right of survivorship as to said suit if either die pending the action.' Acts 1887, p. 43. It will be noted that the act of 1887 was not an independent and distinct act, but was an amendment to section 2971 of the Code of 1882, as amended by the above act of 1878. This act was not necessary in order to enable minor children to recover for the homicide of their mother under said section of the Code, because this court had held, in *Atlanta & West Point Railroad Co.* v. *Venable*, 65 *Ga.* 55, that this section gave a right of action to minor children for the homicide of their mother, and did not restrict their right to a recovery for the homicide of their father. Is the right given to adult children to recover for the homicide of their mother under the act of 1887? Prior to the passage of that act, the husband could not recover for the homicide of his wife. Her minor, dependent children alone could sue for her homicide. The main purpose of the act of 1887 was to give the husband the right to recover jointly with her children for the homicide of his wife. The only effect of this act, so far as children are concerned, is to lessen the amount which they could recover for the homicide of their mother, as under this act the full value of the life of the wife was to be shared by the husband and children jointly. In this amendatory act of 1887, and in defining therein what children could recover jointly with the husband for the homicide of the wife, the legislature again used the language, 'child or children,' just as it was used in section 2971 of the Code of 1882, in defining what children could recover for the homicide of the father. This court

had defined the meaning of this language in *Mott* v. *Central Railroad* [70 *Ga.* 680, 48 Am. R. 595, as meaning minor child or minor children but excluding adult child or children]. When the legislature passed the act of 1887, it knew the meaning that had been put by this court upon the language, 'child or children,' in the previous statute defining the right of children to recover for the homicide of their father; and when it used the same language in defining the joint right of the husband and children to recover for the homicide of the wife, we conclude that it used this language in the later statute with the meaning which had been put upon it by this court. This meaning of the language, 'child or children,' has been consistently followed by this court. *Coleman* v. *Hyer*, 113 *Ga.* 420 (38 S. E. 962) ; *Western & Atlantic R. Co.* v. *Harris*, 128 *Ga.* 394 (57 S. E. 722) ; *Beale* v. *Georgia Railway & Power Co.*, 150 *Ga.* 774 (105 S. E. 447). Before the passage of the act of 1924, to which we shall refer, the rights of children to recover for the homicide of their father and mother were defined in section 4424 of the Code of 1910. In defining what children are entitled to recover either for the homicide of the father or the homicide of the mother, the same language is used in this section. It would hardly be consistent with sound logic to hold that the same language has a different meaning in the two provisions giving the children the right to recover for the homicide of the father and the mother. So we are of the opinion that only minor children can recover for the homicide of their mother, under section 4424 of the Code of 1910. . . This view is strengthened by the act of August 18, 1924 (Acts 1924, p. 60), under which 'a child or children, minor or sui juris, may recover for the homicide of the husband or parent,' which shows that the legislature was of the opinion that children sui juris could not, prior to the passage of this act, recover for the homicide of their parent."

The reasoning above stated tends to sustain the proposition that after the amendatory act of 1924, supra, adult as well as minor children were afforded a right of action for the tortious homicide of their mother. Section 4424 of the Civil Code of 1910, as amended by the act of 1924, was construed in *Peeler* v. *Central of Georgia Railway Co.*, 163 *Ga.* 784 (2) (137 S. E. 24). It was said in the opinion by Mr. Chief Justice Russell: "We think it plain that the only intention of the General Assembly, in inserting into section

4424 of the Code the words 'minor or sui juris,' was to give an unqualified right of action upon the sole ground of relationship existing between parent and child. We deem the use of these words as an explicit declaration on the part of the General Assembly that a child, by virtue of the relationship, has an interest of value in the life of its father, for which it is entitled to recover if deprived thereof by the tort of another. It is true that this court has hitherto held that it was not enough to say that a child should have the right to thus recover to thereby include children who had attained their majority; this court having frequently held that, in view of the fact that no obligation rests upon a parent to support his children who are sui juris, the word 'child' must be construed to refer alone to children dependent by reason of minority upon the father for support. Our rulings have therefore carried with them the implication that unless a child was dependent upon the father, he had no right to recover in damages for the homicide of the father. Upon this theory the decisions in *Mott* v. *Central Railroad,* 70 *Ga.* 680 (48 Am. R. 595), *W. & A. R. Co.* v. *Harris,* 128 *Ga.* 394 (57 S. E. 722), *Beale* v. *Georgia Railway & Power Co.,* 150 *Ga.* 774 (105 S. E. 447), and similar cases, were based. Thus interpreted, the only law, before the legislature undertook to amend it in 1924, was as follows: A widow, or, if no widow, a minor child or minor children dependent upon the deceased, may recover for the homicide of the husband or parent. It is perfectly plain that it was the purpose of the General Assembly in the passage of the act of 1924 to undertake to change and remedy that construction of the then existing law. As construed by this court, the right of action for the homicide of a father was confined to minor children dependent upon the deceased. The General Assembly, as it had the power, determined to change the law so as to include all the children of a father, whether minors or sui juris. It included all children without regard to actual dependency, or the dependency which might be implied from minority and the obligation of the father to support a minor. It gave the right of action, whether they were minors or whether they were sui juris, to both those who were minors and those who were sui juris, thereby making the question of dependence absolutely immaterial. For this reason decisions construing sections 4424 and 4425 prior to the passage of the act of 1924, and requiring dependency as a qualification

before a child would be entitled to recover for the homicide of its father, are not longer in point. Giving the language of the act of 1924 its plain ordinary meaning, as the Code prescribes, the language, 'A widow, or, if no widow, a child or children, minor or sui juris, may recover for the homicide of the husband or parent,' leaves no room for implication of any qualification to entitle a widow or child of a husband or father who has been tortiously killed, other than the mere relationship named. Certainly a widow would not be excluded from recovering, if at the time of the homicide she was living separate from her husband and was a woman of large financial means. Language used in decisions prior to the amendment of 1924, imposing by construction the additional requirement that the word 'child' was not used in its generic sense, but in the special sense of dependency, and therefore that no child except one dependent was entitled to recover, the words 'dependent upon the deceased' would have to be supplied as much after the word 'widow' in the Code section as after the words 'child or children.' From the history of legislation upon this subject it is plain that it was the purpose of the General Assembly in 1924 to at last put the subject-matter of the right to recover in behalf of children growing out of the value of a father's life to a child beyond construction or question. It is so plain that he who runs may read and he who reads may understand." In the dissenting opinion by Mr. Justice Gilbert it was said: "The act of 1924, by inserting the words 'minor or sui juris,' after the word 'children,' in the second line of the section, merely enabled adult children as well as minors to sue for the homicide of the father, and left unchanged the rule that required allegation and proof of dependency."

The foregoing discussions relate to construction of the words "children, minor or sui juris," as employed in the amending act of 1924. The homicide involved in the case was that of a father, but all that was said as to the meaning of those words might also be said where the homicide is that of the mother. So it may be stated that since the act of 1924, supra, children of a widowed mother, whether minors or adult, have a right of action for the tortious homicide of their mother. But what are the rights of children relative to the tortious homicide of their mother, where she was not a widow, but left a husband, who lived for a time and died leaving the children surviving him, and no action was

commenced before the death of the husband. In the amending act of 1924 (Acts 1924, p. 60) it was declared that the said Code section shall be amended so as to read: "A widow, or, if no widow, a child or children, minor or sui juris, may recover for the homicide of the husband or parent; and if suit be brought by the widow or children, and the former or one of the latter dies pending the action, the same shall survive in the first case to the children, and in the latter to the surviving child or children. The husband may recover for the homicide of his wife; and if she leaves child or children surviving, said husband and children shall sue jointly and not separately, with the right to recover the full value of the life of the deceased, as shown by the evidence, and with the right of survivorship as to said suit, if either die pending the action. A mother, or, if no mother, a father, may recover for the homicide of a child, minor or sui juris, upon whom she or he is dependent, or who contributes to his or her support, unless said child leaves a wife, husband, or child. Said mother or father shall be entitled to recover the full value of the life of said child. In cases where there is no person entitled to sue under the foregoing provisions of this section, the administrator of the deceased person may sue for and recover for the benefit of the next of kin, if dependent upon the deceased, or to whose support the deceased contributed; in which event the amount of the recovery shall be determined by the extent of the dependency or the pecuniary loss sustained by the next of kin."

This contains four clauses. The first relates to a right of action in favor of a widow, or, if no widow, a child or children. The second relates to a right of action in favor of a husband; and if there be also children, in favor of the husband and children for the homicide of the wife. This was embodied in the act of 1887, supra, and in the Code section before being amended by the act of 1924. The third relates to a right of action in favor of a mother, or, if no mother, a father, for homicide of a child. The fourth relates to a right of action in favor of the next of kin of the person tortiously killed, as referred to in either of the first three clauses, who were "dependent upon the deceased, or to whose support the deceased contributed," the action therefor to be brought by the administrator of the decedent. Under the second clause, where the homicide is of a mother who leaves a husband and child or children,

a right of action is given for the full value of the life of the deceased as may be shown by the evidence, but "said husband and children shall sue jointly and not separately, . . and with the right of survivorship as to said suit, if either die pending the action." This is the clause pertinent to the question propounded by the Court of Appeals. The language of the second clause could not be stricken from the statute, and will admit of no other construction than that the right of action given to the *husband and children* of the mother was joint. This construction was placed upon the statute in *Thompson* v. *Georgia Railway & Power Co.,* 163 *Ga.* 598, 602 (supra), where it was said: "The main purpose of the act of 1887 was to give the husband the right to recover jointly with her children for the homicide of his wife. The only effect of this act, so far as children are concerned, is to lessen the amount which they could recover for the homicide of their mother, as under this act the full value of the life of the wife was to be shared by the husband and children jointly."

That portion of the *second clause* that is quoted above ("said husband and children shall sue jointly and not separately, . . and with the right of survivorship as to such suit, if either die pending the action") expressly requires joint action by the husband and children, and excludes separate actions by them. Under the said *second clause* considered as a whole, a joint cause of action arises in favor of the surviving husband and the children at the time of the tortious homicide of the mother; but under the *above-quoted part* of said section, if a joint action is not commenced by the husband and children while all are in life, the whole cause of action will abate on the death of either the husband or a child. Said above-quoted portion of the second clause provides for survivorship "as to . . suit," if either of the joint plaintiffs die pending an action based on the tortious homicide, but not if the party dies before commencement of the action. Where one of the parties entitled to join in an action for the homicide dies before commencement of the action, the provisions relating to *survival of actions* manifestly do not apply, but the restrictions requiring joint action do apply. In the circumstances stated, one or more of the persons at interest in the joint cause of action, less than all, may not maintain an action for the tortious homicide. It is a statute giving a cause of action that is being construed; and if it

were deemed advisable to give children surviving a husband a cause of action for the tortious homicide of their mother, without restrictions as above indicated, that would be matter for the legislature and not for the courts. The case differs from *City of Elberton* v. *Thornton,* 138 *Ga.* 776 (76 S. E. 62, Ann. Cas. 1913E, 994), which involved a right of action for the homicide of a father, and did not involve a right of action for the homicide of *a wife and mother* under the said second clause of the Code section, which expressly prohibited a suit by the husband and children "separately." It follows from what has been said that the question propounded by the Court of Appeals must be answered in the negative.

*All the Justices concur except Beck, P. J., and Hines, J., who dissent.*

RUSSELL, C. J., concurring specially. As I apprehend the law, judicial construction of a statute must be derived from the explicit language of the statue as stated. Proper judicial construction can not be reached by assuming from extraneous facts a legislative intention which is not expressed. It would seem strange, under the language of the law involved in this case, that it would be possible for one to be guilty of a tortious homicide of the mother, and that by thereafter himself killing the father before a suit could be brought the action would be entirely eliminated. However, in my conception of my duty and under the clear language of the provision adverted to, I am constrained to concur in the negative answer to the question propounded by the Court of Appeals.